UNITED STATES of America, Appellee,

v.

Peter John LEONE, Appellant.

No. 86–2513.

United States Court of Appeals,
Eighth Circuit.

Submitted May 13, 1987.
Decided July 10, 1987.

Anthony F. Renzo, Boulder, Colo., for appellant.

John Jarvey, Washington, D.C., for appellee.

Before HEANEY, BOWMAN, and MAGILL, Circuit Judges.

MAGILL, Circuit Judge.

Peter Leone appeals from his cocaine-related conviction, arguing (1) that the government's procedure leading to trial violated the Speedy Trial Act, (2) that the district court[1] violated his Fifth Amendment rights by requiring him to speak, and (3) that he was denied effective assistance of counsel. After due consideration of these issues, we affirm Leone's conviction.

## I. FACTS.

Narcotics officers of the Des Moines Police Department culminated a cocaine investigation involving Dennis Burdick and appellant Leone on July 20–21, 1985, with the purchase of a pound of cocaine for $28,000. The one-pound purchase on the evening of July 20, 1985, was preceded by two purchases by undercover officers from Burdick of one-eighth ounce and an ounce of cocaine. On July 22, 1985, Leone was arrested in connection with the cocaine purchases. He was held in custody for about five hours and then released with no formal charges being brought at that time.

## II. DISCUSSION.

### A. Speedy Trial Act Violation.

The Speedy Trial Act of 1974, as amended in 1979, 18 U.S.C. § 3161 *et seq.* ("Act"), establishes inside and outside time limits for commencing trial in criminal cases. Section 3161(c)(1) of the Act provides in pertinent part that:

In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

Leone argues that the government's procedure in this case violated the seventy-day period established by this section of the Act. On November 14, 1985, the government filed an indictment charging Leone with conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 (Count I) and possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count II). On November 26, 1985, Leone appeared with counsel before the district court for arraignment on the charges. On January 28, 1986, sixty-four days after Leone was arraigned, and with only six days remaining under the Act to bring him to trial, the government dismissed the indictment on its own motion.

The government then reindicted Leone on April 23, 1986, charging the same offenses as in the original indictment. The arraignment on the reindictment was held on May 28, 1986, and the original trial date of June 2, 1986, was rescheduled for June 30, 1986 at the request of Leone's counsel.[2] On June 30, before trial began, Leone's counsel filed a motion to dismiss based on a violation of the Act. This motion was con-

---

1. The Honorable William C. Stuart, Senior United States District Judge for the Southern District of Iowa.

2. The fact that Leone's trial date was changed from June 2 to June 30 has no impact upon the Speedy Trial Act calculations in this case. Section 3161(h)(8)(A) of the Act provides in pertinent part that "Any period of delay resulting from a continuance granted by any judge * * * at the request of the defendant or his counsel [shall be excluded in computing the time within which trial must commence]."

sidered in chambers and denied. Leone was convicted by jury verdict on July 1, 1986, and sentenced on August 5, 1986, to five years' imprisonment on Count I and five years' imprisonment to run concurrently on Count II plus a special parole term of three years as required by the statute.

■ Leone first points out, and we accept, that where an indictment is dismissed on the government's motion and a defendant is later reindicted, the seventy-day period continues to run from the first indictment. 18 U.S.C. § 3161(h)(6). *See also United States v. Rojas-Contreras*, 474 U.S. 231, 106 S.Ct. 555, 559, 88 L.Ed.2d 537 (1985) (Blackmun, J., concurring). The parties also agree that the dismissal of the first indictment temporarily stops the running of the "speedy trial clock." 18 U.S.C. § 3161(h)(6).

Leone contends, however, that when the government restarts a prosecution, the running of the seventy-day period resumes upon the refiling of the indictment, rather than upon a later event, such as an arraignment pursuant to the second indictment. Leone contends, in short, that after an initial indictment is dismissed, the seventy-day clock resumes running on reindictment only. Thus, according to Leone, because sixty-four days passed between his first appearance and dismissal, and then another forty days passed between his second indictment and original trial date, the Act was violated by thirty-four days.

■ The government argues that for purposes of restarting the "speedy trial clock" the triggering event is the second indictment or second appearance before a judicial officer, whichever is later. Thus, according to the government, although Leone was reindicted on April 23, some forty days before his original trial date, he was arraigned on the reindictment on May 28, 1986, five days from the original trial date and thus falling within the seventy-day limit of the Act by one day. Our examination of the pertinent statutory language and relevant case law compels our conclusion that the government's view on this issue is correct.

Section 3161(c)(1) of the Act, *see supra*, is unambiguous in stating that upon an initial indictment, the seventy-day clock begins to run upon the later of either (1) the information or indictment, or (2) the defendant's appearance before a judicial officer of the court. Section 3161(h) of the Act sets out several periods of delay which shall be excluded from the running of the seventy-day period. Accordingly, section 3161(h)(6), which deals with a dismissal of the indictment by the government, provides that the following period of delay shall not be included in the seventy-day computation.

> If the information or indictment is dismissed upon motion of the attorney for the Government and thereafter a charge is filed against the defendant for the same offense, or any offense required to be joined with that offense, any period of delay from the date the charge was dismissed to the date the time limitation would commence to run as to the subsequent charge had there been no previous charge.

18 U.S.C. § 3161(h)(6).

Thus, to determine when to restart the "speedy trial clock," we must determine when "the time limitation would commence to run as to the subsequent charge had there been no previous charge." We find crucial in this section the words: "had there been no previous charge." We therefore read the section as stating that for purposes of restarting the seventy-day clock, the second charge is treated as an original charge. Accordingly, section 3161(c)(1), covering the original charge and specifying that the *latter* of indictment or appearance is the triggering date, applies.

The cases examining this issue have followed this interpretation. In *United States v. Rodriguez-Restrepo*, 680 F.2d 920 (2d Cir.1982), the defendant was indicted on November 20, 1979, and the indictment was dismissed on the government's motion on December 20, 1979. The defendant was then reindicted on February 22, 1980, but was not arraigned on this second indictment until January 14, 1981. The court stated:

When an indictment is dismissed and the defendant is subsequently indicted on the same offense or an offense based on the same conduct, the time between the dismissal and the later re-indictment or first appearance on the subsequent indictment is not included in the computations pursuant to the Act. 18 U.S.C. § 3161(h)(6). Thus, the appropriate date for calculating the recommencement of running of time pursuant to the Act is January 14, 1981, the date of Ms. Rodriguez-Restrepo's first appearance before a judicial officer in the Eastern District on these charges.

*Rodriguez-Restrepo,* 680 F.2d at 921.

Similarly, in *United States v. Cova,* 580 F.Supp. 588 (N.D.Ind.1984), *aff'd,* 755 F.2d 595 (7th Cir.1985), the court determined that the excludable time under section 3161(h)(6) "runs to the latter of the date of the filing of the second indictment or the date defendant has first appeared on these amended charges. * * * Thus the period of time from * * * the dismissal of the first indictment * * * to defendant's post second indictment appearance was excludable time under § 3161(h)(6)." *Cova,* 580 F.Supp. at 590. *See also United States v. Scott,* 557 F.Supp. 990, 994–95 (N.D.W.Va. 1983).

Leone relies on *United States v. Arkus,* 675 F.2d 245, 247 (9th Cir.1982), where the Ninth Circuit held that the seventy-day clock was tolled from the date of dismissal on the government's motion until reindictment, rather than rearraignment.

The Ninth Circuit has, however, ruled more recently and explicitly on this issue. In *United States v. Feldman,* 788 F.2d 544, 548 (9th Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987), the court stated that "if a government motion prompts dismissal of the indictment, and the defendant is later reindicted for the same offense, the original seventy day period is tolled only for the period between dismissal and reindictment or rearraignment, whichever is later. 18 U.S.C. § 3161(h)(6)." The *Feldman* court went on to point out, moreover, that *Arkus* was not explicit in choosing reindictment

over rearraignment, and that the choice of date in *Arkus* made no difference to the applicability of the seventy-day limit. *Feldman,* 788 F.2d at 548 n. 2. In sum, we accept *Feldman* rather than *Arkus* as espousing the Ninth Circuit's position on this issue. We therefore conclude, based upon the explicit wording of the Act and the uniform weight of case law, that Leone's speedy trial attack on his conviction must fail.

**B. Fifth Amendment Claims.**

Leone next argues that the district court violated two Fifth Amendment rights; his right against self-incrimination and his right to due process.

We summarize the events pertinent to this issue. As part of the cocaine investigation, officers taped telephone conversations involving the drug suspects, and these tapes were later played back in court during trial. A key telephone call was made at approximately 8:45 p.m. on July 21, 1985, between Officer Emary, who was working undercover on the case, and Dennis Burdick, during which time the two men tried to settle the situs of a cocaine delivery. A third individual, identified as Leone, interceded in the conversation and spoke directly to Officer Emary.

After Burdick delivered the cocaine to Officer Emary that evening, he was arrested and several hours later, in the early morning of July 22, agreed to take Officer Emary back into his residence to identify the person who had brought the cocaine over earlier in the evening. Officer Emary testified that when he entered the house he saw Burdick talk briefly with Leone, and during this conversation he heard Leone say the following three sentences: "About an hour," "I took the phone off the hook, one of them," and "I did." Officer Emary testified that Leone's voice was the same voice he had heard during the 8:45 p.m. telephone conversation. Burdick and Leone then left the house and a short time later Leone was arrested.

During trial, Officer Emary testified to his voice identification of Leone, based upon his comparison of the taped telephone

voice and the short overheard conversation. After Officer Emary made the identification, the government requested, and the court ordered, that Leone speak certain words connected with the identification testimony so that the jury could compare his voice with the voice on the tape. Leone, who had not planned to testify, was called to the stand for the limited purpose of reading into the record the three sentences that Officer Emary heard him speak to Burdick on the morning of July 22, 1985.

Leone argues that although a defendant who has chosen not to testify may be required to demonstrate physical characteristics for purposes of identification, the defendant may not be required to engage in communicative or testimonial activity. He cites *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and *United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), in support of his argument. He argues that in this case, the words he was required to speak were testimonial in character, rather than identificative, because Officer Emary had already testified that the voice he heard on the phone and in person were the same. He argues that this coerced participation in a prosecutorial experiment, designed to support Officer Emary's credibility, violated his Fifth Amendment right against self-incrimination.

We find, however, that *Wade* and *Dionisio* offer little to support Leone's argument. In *Wade*, the Supreme Court stated that "compelling Wade to speak within hearing distance of the witnesses, even to utter words purportedly uttered by the robber, was not compulsion to utter statements of a 'testimonial' nature; he was required to use his voice as an identifying physical characteristic, not to speak his guilt." *Wade*, 388 U.S. at 222–23, 87 S.Ct. at 1930. Similarly, in *Dionisio*, the Court stated:

> *Wade* and *Gilbert* [*v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967)] definitively refute any contention that the compelled production of the voice exemplars in this case would violate the Fifth Amendment. The voice recordings were to be used solely to measure the physical properties of the witnesses' voices, not for the testimonial or communicative content of what was to be said.

*Dionisio*, 410 U.S. at 7, 93 S.Ct. at 768. *See also United States v. Williams*, 704 F.2d 315, 320 (6th Cir.), *cert. denied*, 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983); *United States v. Delaplane*, 778 F.2d 570, 574–76 (10th Cir.1985), *cert. denied*, —— U.S. ——, 107 S.Ct. 104, 93 L.Ed.2d 54 (1986).

■ It strains credulity to argue that uttering the phrases: "About an hour," "I took the phone off the hook, one of them," and "I did," which are totally void of any incriminatory content, amounts to an admission of guilt. We therefore reject Leone's argument on this ground.

■ Leone also argues that his Fifth Amendment right to due process was violated because the words he was made to speak were, under the circumstances, so unnecessarily suggestive as to prejudice the jury against him. He argues that making him speak the exact words which Officer Emary testified to hearing just before Leone was arrested placed Leone into the arrest scenario that Officer Emary had created in the jurors' minds. He argues that because no other voices were elicited for comparison and the voice on the tape recording was distorted, his case is on all fours with *Palmer v. Peyton*, 359 F.2d 199, 201–02 (4th Cir.1966). In *Palmer*, a conviction based in large part on the victim's voice identification of the suspect was overturned. As here, in *Palmer* the suspect's voice was the only one presented; however, in *Palmer* the identifying witness was prepared for the identification by police in a manner that was highly prejudicial and suggestive, and which virtually guaranteed that the witness would pick the speaker as her assailant. *Palmer*, 359 F.2d at 201. A similarly poisoned atmosphere was not present in this case.

We find the case of *United States v. Domina*, 784 F.2d 1361, 1371–72 (9th Cir. 1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987), to be more

persuasive as to this issue. In *Domina* the court required the defendant to repeat two phrases that the victim testified the robber had said: "Ladies, this is a holdup," and "Put all the money in a bag." On appeal, the defendant raised the same argument raised here; that requiring him to repeat, in the presence of the jury, the exact language the robber had purportedly used was unduly prejudicial, creating an aura of guilt because of the words uttered. Although the court noted that a better course would have been to make the defendant repeat neutral words, it nonetheless affirmed the conviction.[3] As was the case here, the *Domina* court noted that the identification was done in open court in the presence of the jury with the availability of cross-examination to reveal the weakness of such a procedure. As was also the case here, the *Domina* court also found that the conviction did not rest completely on the voice identification, but that there was substantial independent evidence of guilt. We conclude, as did the *Domina* court, that under the circumstances of this case, it was not an abuse of discretion for the district court to allow the jury to consider this identification evidence along with the considerable other evidence linking Leone to the crime.

### C. Ineffective Assistance of Counsel.

Leone finally argues that his trial counsel failed, in three respects, to provide him with the level of representation required by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Specifically, he argues that (1) his trial counsel failed to submit an argument relating to the expiration of the seventy-day time limit in the Speedy Trial Act and also deceived him by assuring him that the argument had been submitted, (2) his counsel may have failed to preserve his Fifth Amendment claims, and (3) his counsel erred in choosing a hearing expert rather than a voice expert as his expert witness. We have examined these contentions in

---

**3.** Similarly, in *Wade* the individual was required to state "something like 'put the money in the bag,' the words allegedly uttered by the robber." 388 U.S. at 220, 87 S.Ct. at 1929. The

light of the standards set by *Strickland* and find them to be without merit. Accordingly, Leone's conviction is affirmed.

phrases Leone was made to speak in this case carry far less potentially prejudicial criminal implication than the phrases which were nonetheless allowed in *Wade* and *Domina*.