FOR PUBLICATION

## JUDICIAL COUNCIL OF THE NINTH CIRCUIT

<table>
<tr><td>IN RE APPROVAL OF THE JUDICIAL EMERGENCY DECLARED IN THE EASTERN DISTRICT OF CALIFORNIA</td><td>ORDER</td></tr>
</table>

Before: **THOMAS**, Chief Circuit Judge, **BYBEE, IKUTA, N. R. SMITH, MURGUIA**, and **CHRISTEN**, Circuit Judges, **HAMILTON, MARTINEZ, PHILLIPS**, and **SEABRIGHT**, Chief District Judges, and **LEW**, Senior District Judge

On March 17, 2010, Chief District Judge Kimberly J. Mueller declared a judicial emergency in the Eastern District of California pursuant to 18 U.S.C. § 3174(e). Finding no reasonably available remedy, the Judicial Council agreed to continue the judicial emergency for an additional one-year period and suspend the time limits of 18 U.S.C. § 3161(c). The continued judicial emergency will end on May 2, 2021.

The attached *Report of the Judicial Council of the Ninth Circuit Regarding a Judicial Emergency in the Eastern District of California* constitutes the findings of fact and conclusions of law of the Judicial Council justifying a declaration of judicial emergency pursuant to 18 U.S.C. § 3174. This report was submitted to the Director of the Administrative Office of the U.S. Courts. *See* 18 U.S.C. § 3174(d).

Adopted: April 16, 2020

Hon. Sidney R. Thomas, Chair

**REPORT OF THE JUDICIAL COUNCIL OF THE NINTH CIRCUIT
REGARDING A JUDICIAL EMERGENCY
IN THE EASTERN DISTRICT OF CALIFORNIA
Submitted to the Administrative Office of the U.S. Courts
Pursuant to 18 U.S.C. § 3174(d)(1)
April 16, 2020**

On March 17, 2020, Chief District Judge Kimberly J. Mueller declared a judicial emergency in the Eastern District of California under 18 U.S.C. § 3161. She reported that under the emergency declarations of national, state and local governments, as well as recommendations from the Centers for Disease Control and Prevention to convene groups of no more than 10 people, the court is unable to obtain an adequate spectrum of trial jurors. The suggested physical distancing measures required to protect public safety diminishes the availability of counsel, witnesses, parties, the public, Probation and Pretrial Services, and court staff to be present in the courtroom. Chief District Judge Mueller sought the Ninth Circuit Judicial Council's approval in declaring an emergency that would extend the time limits of the Speedy Trial Act (STA) for bringing accused criminal defendants to trial. This type of request has been approved on five occasions, with Circuit Judicial Councils approving judicial emergencies under 18 U.S.C. § 3174 (e) since the STA was enacted.

With the immediate and pending national and local state of emergencies, Chief District Judge Mueller was compelled to declare a judicial emergency under 18 U.S.C. § 3174(e). This judicial emergency period commenced on March 17, 2020, and will end on May 1, 2020. After gathering additional data, the Judicial Council found no reasonable remedy, thus agreed to declare a judicial emergency, and suspend the STA time limits required by 18 U.S.C. § 3161(c) in the District for one year. The continued judicial emergency will commence on May 2, 2020, and will conclude on May 2, 2021.

Under 18 U.S.C. § 3174(d), the Judicial Council hereby submits to the Administrative Office of the United States Courts the Eastern District of California's application for a declaration of a judicial emergency and a written report stating in detail the reasons for granting the application.

Report of the Judicial Council of the Ninth Circuit Regarding a
    Judicial Emergency in the Eastern District of California
April 16, 2020
Page 2

## I.      National, State, and County State of Emergencies – Public Safety

On March 13, 2020, the President of the United States issued a proclamation declaring a National Emergency in response to the COVID-19 (Coronavirus Disease) pandemic. The Governor of the State of California declared a Proclamation of a State of Emergency to exist in California on March 4, 2020. Health Officials from the 34 counties the Eastern District serves have either issued local emergency orders or directed citizens to abide by state guidance related to public gatherings.

On March 27, 2020, the Judicial Conference of the United States, acting pursuant to the authority granted it under the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), specifically found that "emergency conditions due to the national emergency declared by the President under the National Emergencies Act (50 U.S.C. § 1601, et seq.) with respect to the Coronavirus Disease 2019 (COVID-19) have materially affected and will materially affect the functioning of the federal courts generally."

The World Health Organization declared COVID-19 a pandemic on March 11, 2020. In their continuing guidance, the Centers for Disease Control and Prevention (CDC) and other public health authorities have suggested the public avoid social gatherings in groups of more than 10 people and practice physical distancing (within about six feet) between individuals to potentially slow the spread of COVID-19. The virus is thought to spread mainly from person-to-person contact and no vaccine currently exists.

No information is currently available to determine when the CDC may retract its recommendations regarding limited group gatherings and physical distancing. By limiting person-to-person contact, the public may "flatten" the epidemic curve of the COVID-19 outbreak.

## II.     A Judicial Emergency Exists in the Eastern District of California

### A.  18 U.S.C. § 3174: The Judicial Emergency Provision

According to 18 U.S.C. § 3174(a), upon application by the district, a judicial council "shall evaluate the capabilities of the district, the availability of visiting

Report of the Judicial Council of the Ninth Circuit Regarding a
    Judicial Emergency in the Eastern District of California
April 16, 2020
Page 3

judges from within and without the circuit, and make any recommendations it deems appropriate to alleviate calendar congestion resulting from the lack of resources." If a judicial council finds no reasonably available remedy, it may declare a judicial emergency and suspend the 70-day time limit for a period up to one year, instead allowing up to 180 days before a trial must commence. *See* 18 U.S.C. § 3174(b). The time limits to try detained persons "who are being detained solely because they are awaiting trial" are not affected by the emergency provision. *Id*. If the time limits are not suspended, the sanction for not bringing a defendant to trial within 70 days of the filing of the indictment is a dismissal of the indictment. *See* 18 U.S.C. § 3162(a)(2).

The statute does not specify what qualifies as an emergency or what factors to assess before determining that there is "no reasonably available remedy." In the legislative history of the STA, many members of Congress commented on the importance of a court's resources to be able to comply with the Act's time limits, and the ability to suspend time limits if a court could not meet those requirements. *See* 120 Cong. Rec. 41,733, 41,755 (1974).

Congress did not intend that a district court demonstrate its inability to comply with the STA by dismissing criminal cases and releasing would-be convicted criminals into society. *See* H.R. Rep. No. 93-1508 at 80-82, *reprinted* in 1974 U.S.C.C.A.N. 7401. In fact, the emergency provision has been used has been used previously on five occasions to avoid imminent criminal dismissals as a sanction for non-compliance. *See United States v. Bilsky*, 664 F.2d 613,619-20 (6th Cir. 1981) (Sixth Circuit suspended time limits for one year in the Western District of Tennessee shortly after the STA became effective in 1980); *United States v. Rodriguez-Restrepo*, 680 F.2d 920, 921 at n.1 (2d Cir. 1982) (Second Circuit approved emergency for the Eastern District of New York, noting the district's "burgeoning caseload and calendar congestion."); the Ninth Circuit approved a declaration of emergency pursuant to 18 U.S.C. § 3174(b) for the District of Arizona on February 24, 2011, the Southern District of California on April 2, 2020, and the Central District of California on April 9, 2020.

In addition to the statutory judicial emergency, as outlined above, the Eastern District of California also has a "judicial emergency" as defined by Judicial Conference policy. A vacancy on a district court is considered an "emergency" if the court's "weighted filings" exceed 600 per judgeship. The

Report of the Judicial Council of the Ninth Circuit Regarding a
    Judicial Emergency in the Eastern District of California
April 16, 2020
Page 4

Eastern District of California's weighted filings, 745 per judgeship (73% above the Conference standard), are high enough to be deemed an emergency. The District is authorized six judgeships and has two vacancies. The adjusted weighted filings per *judge* is 1,118. All vacancies are categorized as judicial emergencies. There are no nominees pending, and past vacancies in the District lasted anywhere from eleven months to three years.

### B.  The Eastern District of California's Application

Chief District Judge Mueller's application dated April 6, 2020, outlines the measures the court is taking to maintain the public's safety while trying to remain in compliance with applicable statues and mandated deadlines. The CDC recommendations regarding gatherings of 10 or fewer people make essential tasks such as holding civil and criminal jury trials, and criminal proceedings including sentencings, initial appearances, etc., unattainable.

## III.  Reasons for Granting the Southern District of California's Application

### A.  Weighted Caseload

The Eastern District of California currently ranks 1st in the Ninth Circuit and 8th nationally in weighted filings, with 745 weighted filings per *judgeship* for the 12-month period ending December 31, 2019. Considering the two judicial vacancies, the adjusted weighted filings per *judge* is 1,118. Overall, the total civil and criminal filings in the District reached 4,682 in 2019.

Report of the Judicial Council of the Ninth Circuit Regarding a
    Judicial Emergency in the Eastern District of California
April 16, 2020
Page 5

| 12 Month Period Ending December 31, 2019 | | | Numerical Standing US | Numerical Standing Circuit |
|---|---|---|---|---|
| **Action per Judgeship** | **Filings** | Total | 855 | 11 | 2 |
| | | Civil | 713 | 6 | 1 |
| | | Criminal Felony | 95 | 44 | 6 |
| | | Supervised Release | 47 | 32 | 7 |
| | Pending Cases | | 1234 | 6 | 1 |
| | Weighted Filings | | 745 | 8 | 1 |
| | Terminations | | 866 | 10 | 2 |
| | Trials Completed | | 13 | 60 | 5 |

The district judges are required under the STA to give priority to criminal cases. The District has not received any additional permanent or temporary judgeships since 1978.

### B. Judicial Vacancies

The District is authorized six permanent judgeships and has two vacancies. All are categorized as judicial emergencies. There are no nominees pending, and past vacancies in the District lasted anywhere from eleven months to three years. There is only one District Judge available in the Fresno Division to hear criminal cases.

Twelve full-time and two recall magistrate judges are leveraged to manage the District's congested court. In the recent 2021 Biennial Survey of Judgeship Needs, the District has requested five additional judgeships. Since 2005, the District has requested anywhere from four to six additional judgeships.

### C. Judicial Emergency in the Eastern District of California

The ongoing Judicial Emergency in the District has been exacerbated by two recent judicial vacancies. The District has requested five additional judgeships, which comes while operating under intensified caseload strain following the Inactive Senior Status of Judge Lawrence J. O'Neill and Senior Status of Judge Morrison C. England. Judge England took Active Senior Status on December 17,

Report of the Judicial Council of the Ninth Circuit Regarding a
    Judicial Emergency in the Eastern District of California
April 16, 2020
Page 6

2019 and Judge O'Neill took inactive senior status on February 2, 2020. Concurrently, Senior District Judge Garland E. Burrell assumed inactive senior status effective December 31, 2019.

With no nominations made and no indication of when these two vacancies in the District will be filled, workload stress levels are heightened for the existing judges and the administration of justice in the court is affected in ways they can no longer adequately mitigate. Of the six Article III seats, two preside in the Fresno Division. With the departure of Judge O'Neill, who worked in the Fresno Division, this leaves the court with a single district judge in that office. Approximately 450 civil cases and 300 criminal defendants that were previously assigned to Judge O'Neill are currently unassigned while awaiting the appointment and confirmation of a new district judge. Under the current circumstances, the District has been compelled to issue temporary emergency procedures to stretch its critically low resources across its heavy caseload, while prioritizing felony criminal cases to avoid Speedy Trial dismissals.

Past vacancies have had the effect of increasing the pending caseload of the District. With high caseloads and already critically low judicial resources, the current vacancies magnify the burden of the District's caseload. It has come to a time where the delivery of justice in the Eastern District of California is seriously imperiled.

D.  Limitations of In Person Appearances

Pursuant to the authority granted under the CARES Act and the Judicial Conference of the United States, along with previous authority granted by the Judicial Council of the Ninth Circuit Court of Appeals, the District has been exploring use of audio and video capabilities for required in-person hearings such as initial appearances. Many detention centers are not capable of handling audio or video appearances. The welfare of the court, federal public defenders, CJA attorneys, US Marshals Service and defendants are placed at risk each time parties congregate in person for hearings and defendants are transported to and from the courthouse. Until a remedy is made available, the court cannot feasibly sustain compliance with STA deadlines given the high number of criminal defendants processed daily while concurrently practicing small gathering and physical distancing guidelines.

Report of the Judicial Council of the Ninth Circuit Regarding a
    Judicial Emergency in the Eastern District of California
April 16, 2020
Page 7

E. Limited Courtroom Availability

Chief District Judge Mueller has reported that the District is currently operating under limited capacity during the COVID-19 pandemic. Only limited hearings are being conducted and there are constraints on the use of video and teleconference resources. Any in person proceedings in Sacramento are set to be held in the largest ceremonial courtroom in the Robert T. Matsui Courthouse in order to facilitate physical distancing and promoting the health and safety of the public, including grand jurors, witnesses, counsel, and court reporters. There are mixed capabilities at many of the local jails, where federal pretrial detainees are housed, to accommodate videoconference proceedings and telephonic court hearings.

The District also needs to minimize the exposure in courtroom spaces and accommodate the necessary daily sanitizing by General Services Administration (GSA) staff. Under pandemic protocols, GSA is required to follow separate disinfection procedures to meet California Department of Public Health and Cal/OSHA guidelines to contain and control harmful exposures from aerosol transmissible pathogens requiring droplet precautions, including COVID-19.

IV. **Proposal for Alleviating Congestion**

A. Visiting Judges

The District is unable to seek designations for vising judges due to the COVID-19 pandemic. While travel restrictions may be mitigated by utilizing telephone or video hearings where possible, the judiciary is impacted on a national level by the public safety guidelines recommending gatherings of less than 10 persons and physical distancing of at least six feet.

B. Declaration from CDC Regarding Public Gatherings

The backlog of cases caused by the restriction on public safety mandates can only start to be alleviated once the CDC lifts its guidance regarding travel-associated risks and congregate settings and physical distancing, and the court is able to make a determination that it is once again safe to resume its operations as

Report of the Judicial Council of the Ninth Circuit Regarding a
     Judicial Emergency in the Eastern District of California
April 16, 2020
Page 8

usual. The one-year extension will allow the court the necessary time to process the backlog as well as manage the influx of new cases once it is deemed once again safe for members of the public to congregate.

### C. Resumption of Normal Courtroom Operations

Until the CDC lifts restrictions on the size of public gatherings and there is consensus that it is once again safe to return the court to its high level of operations in all courtrooms, the District is required to conduct court proceedings in as minimal court spaces as possible.

## V. Conclusion

The Eastern District of California (along with all of the other districts across the Ninth Circuit) and the Ninth Circuit Judicial Council are exploring every alternative to prioritize essential hearings and keep court operations moving as quickly as possible while maintaining the welfare of the public. However, the emergency situation in the Eastern District of California has required the District and the Judicial Council of the Ninth Circuit to invoke the provisions of 18 U.S.C. § 3174(c) to extend the STA time periods for bringing defendants to trials.

Submitted by the Judicial Council
of the Ninth Circuit:

Sidney R. Thomas, Chief Circuit Judge
Jay S. Bybee, Senior Circuit Judge
Sandra S. Ikuta, Circuit Judge
N. Randy Smith, Senior Circuit Judge
Mary H. Murguia, Circuit Judge
Morgan Christen, Circuit Judge
Phyllis J. Hamilton, Chief District Judge
Ricardo S. Martinez, Chief District Judge
Virginia A. Phillips, Chief District Judge
Michael J. Seabright, Chief District Judge
Ronald S.W. Lew, Senior District Judge